UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| E-Z Serve Convenience Stores, Inc., | ) | Case No. 02-83138 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Richard M Hutson, II, Chapter 11 | ) | |
| Trustee for E-Z Serve Convenience | ) | |
| Stores, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 04-09183 |
| | ) | |
| v. | ) | |
| | ) | |
| Electra Partners, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AND OPINION DENYING
MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on July 20, 2006, after notice to all parties in interest, in Durham, North Carolina, upon the Defendant's Motion for Summary Judgment. R. Bradford Leggett and C. Edwin Allman, III, appeared on behalf of the Defendant. Terri L. Gardner and John A. Northen appeared on behalf of the Plaintiff. Having considered the motion, as well as the memorandums of law, affidavits, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

FACTUAL BACKGROUND

On October 4, 2002 (the "Petition Date"), E-Z Serve Convenience Stores, Inc. (the "Debtor"), E-Z Serve Corporation, SSCH Holding Corp., Swifty Serve, LLC, and Swifty Serve

Holding Corp. each filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code.  At the time of the filing, the Debtor operated over 600 convenience stores throughout the Southeast.  The Debtor, at the time of the Petition Date, was a wholly owned subsidiary of Swifty Serve, Corp. ("Swifty Serve").

On October 18, 2002, upon motion by the Debtor, Richard M. Hutson, II (the "Plaintiff") was appointed to serve as the Chapter 11 trustee for the Debtor, as well as the related entities. The cases were not substantially consolidated, and on November 9, 2004, all of the cases except that of the Debtor, including E-Z Serve Corporation, SSCH Holding Corp., Swifty Serve Holding Corp. and Swifty Serve, LLC, were converted to Chapter 7.

On October 4, 2004, the Plaintiff filed the complaint initiating this adversary proceeding.  The claims asserted in this adversary proceeding are related to and substantially similar to the claims the Plaintiff has asserted in adversary proceedings against HD Venture Capital, Inc. ("HD Venture") and Bay Harbour Management ("Bay Harbour").  In each adversary proceeding, the Plaintiff is seeking the recovery of $400,000.00, which represents that amount the Debtor paid to the Defendant, HD Venture, and Bay Harbour in late 2000 or early 2001.

Bay Harbour, HD Venture, and the Defendant were fund managers and representatives of E.F. Private Equity Partners (Americas) LP, Halpern Denny Fund II, L.P., and Bay Harbour Investors, investors in Swifty Serve ("Swifty Investors").  Over approximately a five year period, Bay Harbour, HD Venture, and the Defendant arranged for and obtained funds which were delivered to Swifty Serve, portions of which were then funneled the Debtor.  Each of these fund managers, including the Defendant, held two positions on the Debtor's Board of

Directors and was paid quarterly fee of $50,000.00 (the "Monitoring Fee") by the Debtor.

In late 2000, Debtor targeted two companies for acquisition: Camp Oil Company, Inc. and Townstar.  To acquire these, the Debtor needed $12 million in cash infusions.  The Defendant, along with Bay Harbour, HD Venture and two other entities, agreed to make this funding available to Swifty Serve.  On December 28, 2000, HD Venture deposited $4,375,000.00 into Swifty Serve's account.  On January 2, 2001, the Bay Harbour deposited $2,814,336.00 into Swifty Serve's account.  On February 1, 2001, the Defendant deposited $3,535,496.00 into Swifty Serve's account.  The day after each deposit, the Debtor paid a fee of $400,000.00 (the "Acquisition Fee") to each of the five fund managers, including the Defendant, that arranged for the deposit. The Debtor paid a total of $2 million in Acquisition Fees.  There is no evidence of a written contract or agreement between the Debtor and the Defendant regarding the cash infusions and the Acquisition Fee.  There is no reference to the Acquisition Fee in the minutes of any Board of Directors' meeting.

In the Complaint, the Plaintiff alleges that the $400,000 Acquisition Fee paid to the Defendant was a fraudulent conveyance pursuant to the provisions of the North Carolina Fraudulent Transfer Act.  The Defendant filed an answer in which it denied all material allegations, and has demanded a jury trial.  The Defendant now seeks summary judgment and has consented to the jurisdiction of the Bankruptcy Court for the purpose of hearing and determining this motion.

## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is set forth in Fed. R. Civ. P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides that the movant will

prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The movant has the initial burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable inferences must be drawn in favor of the nonmoving party. Celotex at 330.  Once the moving party satisfies this initial burden, the nonmoving party must present some evidence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If the nonmoving party responds satisfactorily, the motion for summary judgment shall be denied, and the case proceeds to trial. However, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Id. at 249 (citations omitted).

## ANALYSIS

The elements required to prove the existence of a fraudulent transfer under N.C. Gen. Stat. § 39-23.5 are first, a transfer by the debtor of property in which it had an interest without receiving a reasonably equivalent value in exchange for the transfer and, second, that this transfer was made at a time when the debtor was insolvent.  The parties do not dispute that the Defendant received a transfer of property in which the Debtor had an interest.  Whether the Debtor was insolvent at the time of the transfer at issue in this case is a material fact in dispute that cannot be resolved by summary judgment, but for the purposes of this motion only, the court will assume that the Debtor was insolvent. Thus, for the purposes of this motion, the only issue before the court is whether the Debtor received reasonably equivalent value in exchange for the

transfer.

The parties agree that there are no North Carolina cases interpreting "reasonably equivalent value" under N.C. Gen. Stat. § 39-23.5, and, therefore, that it is appropriate to look to bankruptcy law for guidance. The Defendant relies on In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479, 484 (4th Cir. 1992) in which the court focused on the "net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors." The Defendant contends that, in this case, there can be no fraudulent transfer because the Debtor ultimately benefitted from the transaction. That is, while the Debtor may have paid a total of $2 million in Acquisition Fees to the various fund managers, the Defendant reasons that the Debtor had $10 million more at the conclusion of the transaction than it had prior to the commencement of the transaction.

In contrast, the Plaintiff argues that the Acquisition Fees were not paid in consideration for the funding by the Swifty Investors. The Plaintiff points to the fact that there was no written agreement requiring such fees, that the amount of money paid to each fund manager was not related to the amount of capital that each raised, and that Monitoring Fees were already being paid to compensate the fund managers for their work. If the receipt of $12 million from the Swifty Investors was not conditioned upon the payment of the Acquisition Fees to the fund managers, then the Debtor should have concluded the entire transaction with $12 million. Instead, the Debtor concluded the transaction with only $10 million. Thus, the net effect of the transfer by the Debtor to the Defendant and the other fund managers was a total loss of $2 million.

The court finds that whether the Debtor was required to pay the Defendant the $400,000.00 Acquisition Fee in order to receive the $3,535,496.00 equity infusion is a genuine

issue of material fact that cannot be decided on summary judgment. As such, the court cannot determine whether the Debtor received reasonably equivalent value in exchange for this transfer, and the Defendant's Motion for Summary Judgment is DENIED.

**SERVICE LIST**

Terri L. Gardner
P. O. Box 10096
Raleigh, NC 27605-0096

R. Bradford Leggett
P. O. Drawer 5129
Winston-Salem, NC 27113

John A. Northen
P. O. Box 2208
Chapel Hill, NC 27515-2208

Richard M. Hutson
P. O Box 2252-A
Durham, NC 27702

Michael D. West
P. O. Box 1828
Greensboro, NC 27420-1828